Booth, GMef Justice,
delivered the opinion of the court:
This is one of several Indian cases commenced by one or both of the plaintiff Indian tribes under the terms and provisions of a special jurisdictional act approved June 7, 1924 (43 Stat. 537), subsequently modified by a joint resolution approved May 19, 1926 (44 Stat. 568). The act is set forth in finding I. No jurisdictional issue is involved.
Plaintiffs’ petition alleges two causes of action. It is first stated that the Secretary of the Interior, contrary to law, allotted to 466 minor children of Choctaw freedmen forty acres each out of the ChoctaAV and Chickasaw Indian Reservation, of the claimed value of $242,320. The second claim, predicated upon the same premises, seeks a judgment of $283,188.81, the alleged value of 21,134.95 acres of *77 land sold to Choctaw and Chickasaw freedmen under what is known as “ preferential filings The act of April 26, 1906 (34 Stat. 137), granted the right to the freedmen to purchase at its appraised value out of the unallotted lands of the reservation enough land to equal, with that already allotted to each of them, a tract forty acres in area.
No contention is advanced that the freedmen of the Choctaw Nation were not adopted into the same. It is conceded that they were, and no claim is made in this case that the allotments made to both Choctaw and Chickasaw freedmen and their descendants living on September 25, 1'902, were illegally made. The single controversy in the first cause of action is predicated upon an insistence that the Choctaw and Chickasaw Reservation was held by the two nations as tenants in common; that one tenant in common could not dispose of any specific portion of the estate without the consent of the other, and that the agreement to grant allotments to the freedmen was limited both in area and time, as stated in the same, and did not extend to their minor children born between September 25, 1902, and March 4, 1906.
It is our opinion that the case does not exact extended discussion. The findings set forth the admitted facts, and the contention of the plaintiffs we believe to be untenable. The Chickasaw Nation joined in the Atoka Agreement of April 23, 1897 (finding X), subsequently ratified and incorporated in the Curtis Act of June 28, 1898 (finding IX), and was likewise a party to the supplemental agreement of March 21, 1902 (finding XI). Beyond a doubt, in each instance cited, the right of the freedmen of each nation to an allotment equal in value to forty acres of the average land of the two nations was granted, and the freedmen in respect to granted allotments had the same status as the Indians themselves.
The Choctaw and Chickasaw Nations held the reservation occupied by them under the ordinary Indian title. The Indians could neither sell nor mortgage it without legislation of Congress, and it is not disputed that the plenary power of Congress over Indian tribal lands and funds existed. The act of April 26, 1906 (finding XV), in terms *78 authorized the Secretary of the Interior to proceed as he did. The lands of the reservation had not been allotted. No single Indian or freedman owned an acreage in severalty. They were reservation lands in course of allotment, and, as said by the Supreme Court in the case of Gritts v. Fisher, 224 U. S. 640, 648:
“ It is conceded, and properly so, that the later legislation is valid and controlling unless it impairs or destroys rights which the act of 1902 vested in memberb living September 1, 1902, and enrolled under that act. As has been indicated, their individual allotments are not affected. But it is said that the act of 1902 contemplated that they alone should receive allotments and be the participants in the distribution of the remaining lands, and also of the funds, of the tribe. No doubt such ivas the purport of the act. But that, in our opinion, did not confer upon them any vested right such as would disable Congress from thereafter making provision for admitting newly born members of the tribe to the allotment and distribution. The difficulty with the appellants’ contention -is that it treats the act of 1902 as a contract, when £ it is only an act of Congress and can have no greater effect.’ Gherokee Intermarriage Gases, 203 U. S. 76, 93. It was but an exertion of the administrative control of the Government over the tribal property of tribal Indians, and was subject to change by Congress at any time before it was carried into effect and while the tribal relations continued. Stephens v. Cherokee Nation, 174 U. S. 445, 488; Cherokee Nation v. Hitchcock, 187 U. S. 294; Wallace v. Adams, 204 U. S. 415, 423.”
, The freedmen were not “ strangers to the tribe.” While of course not Indians, their long residence on the reservation and their relationship to the Indians doubtless prompted the allowance to them of the allotments they procured.
Section 16 of the act of April 26, 1906 (finding XY, supra), is free from ambiguity. The freedmen of the Choctaw and Chickasaw Nations were granted the right of preferential filings, and the authority of Congress to grant the right is not subject to challenge judicially. Lone Wolf v. Hitchcock, 187 U. S. 553; Stephens v. Cherokee Nation, 174 U. S. 445.
The petition will be dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Gkeen, Judge, concur.